UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EESAM ARABBO,

        Plaintiff,

                              Case No. 13-cv-11331

v.

                              HONORABLE VICTORIA A. ROBERTS

CITY OF BURTON ET AL.,

        Defendants.

_____/

## ORDER DENYING MOTION FOR RECONSIDERATION (ECF NO. 85)

Plaintiff, Eesam Arabbo, requests rehearing or reconsideration of the Court's entry of judgment in favor of Defendants. The Court entered the order after ruling on the record during a hearing on Defendants' motions for summary judgment. In so doing, the Court decided that Plaintiff had not articulated a "policy" which caused a constitutional violation, a necessary predicate for a <u>Monell</u> claim, and that individual Defendants were entitled to absolute immunity because they were engaged in legislative acts. Arabbo asserts that both grounds were palpable error.

For the reasons set forth below, Arabbo's Motion is **DENIED**; however, the Court expands upon the conclusions of its prior order.

**I.    LEGAL STANDARD**

Local Rule 7.1(h)(3) provides the standard of review:

> Generally, and without restricting the court's discretion, the court will not grant motions for ... reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the

1

> parties and other persons entitled to be heard on the motion
> have been misled but also show that correcting the defect will
> result in a different disposition of the case.

E.D. Mich. LR 7.1(h)(3). Palpable defects are those which are "obvious, clear, unmistakable, manifest or plain." Mich. Dep't of Treasury v. Michalec, 181 F. Supp. 2d 731, 734 (E.D. Mich. 2002). "It is an exception to the norm for the Court to grant a motion for reconsideration." Maiberger v. City of Livonia, 724 F. Supp. 2d 759, 780 (E.D. Mich. 2010). "[A]bsent a significant error that changes the outcome of a ruling on a motion, the Court will not provide a party with an opportunity to relitigate issues already decided." Id.

## II.    DISCUSSION

### A.    City of Burton

Arabbo alleges that it was error for the Court to conclude there was no policy that violated his Fourteenth Amendment rights protected by the Equal Protection Clause. A more clear way of stating what the Court found is that there was no violative policy, that even if there was a "policy," Arabbo did not provide sufficient proof to create a fact question that the City of Burton's policy violated his constitutional rights. A summary of the relevant legal standards will illustrate this point.

In order to state a violation of 42 U.S.C. § 1983, a plaintiff must show that "(1) a person, (2) acting under the color of state law, (3) deprived him of a federal right." Sutherland v. Mich. Dep't of Treasury, 344 F.3d 603, 614 (6th Cir. 2003). In Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658 (1978), the United States Supreme Court held that municipalities and local governments are considered "persons" under Section 1983, and can, therefore, be liable for constitutional deprivations. Id. at 690. Municipal

liability for constitutional deprivations can arise "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. A city government is only liable when, through its deliberate conduct, it creates a custom or policy that is the "moving force" behind the deprivation of plaintiff's constitutional rights. Id.; Bd. Of County Commr's v. Brown, 520 U.S. 397, 404 (1997). That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. Brown, 520 U.S. at 404; Diaz v. City of Inkster, No. 05-cv-70423, 2006 WL 2192929 (E.D. Mich. Aug. 2, 2006).

Section 1983 itself contains no state-of-mind requirement independent of that necessary to state a violation of the underlying federal right, so the plaintiff must establish the state of mind required to prove the underlying violation. Brown, 520 U.S. at 405. The requisite degree of culpability for an Equal Protection Clause claim under the Fourteenth Amendment requires the city government to act "with a discriminatory intent and purpose." Diaz, 2006 WL 2192929 at *4 (quoting Boger v. Wayne County, 950 F.2d 316, 324-25 (6th Cir. 1991) and Charles v. Baesler, 910 F.2d 1349, 1356-57 (6th Cir. 1990)). In particular, the "Equal Protection Clause safeguards against the disparate treatment of similarly situated individuals as a result of government action that "either burdens a fundamental right, targets a suspect class, or has no rational basis." Ctr. For Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 379 (6th Cir. 2011). A plaintiff must do more than just introduce evidence of discriminatory intent and suggest that

such intent could have played a role; rather, a plaintiff is required to demonstrate that the adverse decision would not have been made "but for" his race. Diaz, 2006 WL 2192929 at *4; Boger, 950 F.2d at 325.

The Court agrees with Arabbo that a single legislative act can be sufficient to constitute a policy for Monell liability to attach. Perkins v. Clayton Twp., No. 08-cv-14033, 2009 WL 3498815, at *5 (E.D. Mich. Oct. 23, 2009), aff'd sub nom. Perkins v. Twp. of Clayton, 411 F. App'x 810 (6th Cir. 2011) (A resolution is clearly an official action on the part of a city council within its authority and would constitute a policy for purposes of Section 1983 liability). But this Court concluded, after considering the arguments at the hearing in conjunction with the factual record before it, that this was not one of those circumstances.

Arabbo does not specify which Napolitano category of an Equal Protection Claim he makes, but his claim would not survive summary judgment under any of the three aspects (fundamental right, suspect class, no rational basis). It is not the first category; a person does not have a fundamental right to have a City approve his business loan purchase application.

Arabbo's claim – which he characterizes as racial discrimination in some places and ethnic discrimination in others – most clearly implicates the second category, because the resolution targeted his membership in a suspect class. Were this the case, the record illustrates that Arabbo cannot establish that race or ethnicity was the but-for cause behind the City's decision not to purchase his loan. For example, the City stated that it had not received assurances that his financing was in place. Arabbo had previously defaulted on this note with a government agency (HUD). The City also had a

tight budget, which it stated was a factor in its hesitation to be responsible in the event Arabbo defaulted. Moreover, Arabbo's note was evaluated in isolation; it was not evaluated at the same time nor under comparable financial circumstances for the City as the two proposed comparisons he seeks to make.

These same factors also preclude liability under the third Equal Protection category of "no rational basis." In cases like this, referred to as "class-of-one" claims, defendants, due to animus, must have treated a plaintiff differently than similarly situated businesses. Paterek v. Vill. of Armada, Michigan, 801 F.3d 630, 649-50 (6th Cir. 2015); Vill of Willobrook v. Olech, 528 U.S. 562, 564 (2000). Liability under this category requires either (1) disparate treatment from similarly situated individuals and no rational basis for the difference, or (2) that the government action was motivated by animus or ill-will. Assoc. Of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545,549 (6th Cir. 2007); EJS Properties, LLC v. City of Toledo, 698 F.3d 845,864 (6th Cir. 2012). As stated above, because the claim was evaluated in isolation, Arabbo's business was not similarly situated. The City's financial stress and lack of assurances regarding Arabbo's financing create a rational basis for the difference. The record does not support a finding that a majority of the city council members were motivated by animus or ill-will.

In short, the record does not support a finding that this is a case in which race or ethnicity was the but-for cause of the City of Burton's decision not to purchase a note for a business that was owned by an Arab-American citizen. That is what the Court meant when it said Arabbo did not sufficiently allege a policy that caused the violation – there is insufficient support for the Court to conclude that the City Council's vote (a policy)

violated Arabbo's Equal Protection rights.

Moreover, as shown below, because the Court granted summary judgment for the remaining individual Defendants, Arabbo cannot maintain an action against the City of Burton. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual [employee], the fact that the [municipality] may have authorized [the allegedly wrongful act] is quite beside the point."). Arabbo's Motion for Reconsideration does not provide any authority to rebut this finding that the Court articulated at the hearing.

### B. Individual Defendants

First, the Court clarifies its prior order before turning to the substance of Arabbo's Motion. All individual Defendants were treated the same at the hearing; the Court said it "agrees that they are protected by absolute immunity." One of the individual Defendants, City Attorney Michael Joliat, requested qualified immunity whereas the remaining individual Defendants – all city council members – requested absolute immunity. The Court should have stated that all city council members were entitled to absolute immunity and Joliat was entitled to qualified immunity; it did not intend to afford Joliat absolute immunity.

Arabbo says there is no authority to allow a city attorney to assert qualified immunity, citing McCullum v. Taylor, 693 F.3d 696 (6th Cir. 2012). This is a non-starter. McCullum discusses the United States Supreme Court's 2012 decision that declared an attorney who worked for a city part-time could assert qualified immunity. Id. at 701-02 (citing Filarsky v. Delia, 132 S. Ct. 1657 (2012)). Arabbo himself cites Filarsky, so the basis for this argument is puzzling. In any event, those cases discussed individuals who

were hired by private companies to perform tasks on behalf of municipalities. There is no private intermediary here, and thus, no reason why qualified immunity should not apply. This Motion presents no other challenges to qualified immunity. The Court affirms its conclusions stated at the hearing with respect to City Attorney Joliat's entitlement to qualified immunity.

Arabbo contests the Court's grant of absolute immunity for the city council members. But Arabbo's arguments with respect to the City of Burton on one hand and the city council members on the other, are inconsistent. With regard to the City, Arabbo says that only one vote is enough to create a "policy" that reflects a broad custom of the City. Yet when discussing absolute immunity, Arabbo changes his tune and argues "*making policy*, drafting ordinances, and restructuring budgets are core legislative functions," and that one vote at a special meeting that is directed toward a particular person could not be legislative. In fact, Arabbo directly contradicts the point he goes at lengths to make about the City of Burton having a policy, by stating "in this instance, the defendants were not in the process of legislative enactments. They were also not making policy or drafting ordinances."

Importantly, Arabbo presents no authority from the Sixth Circuit or this District. Other courts have found a single vote by a municipality that affects a single entity is a legislative function, and that is what this Court ruled at the hearing. Lanna Overseas Shipping, Inc. v. City of Chicago, No. 96-cv-03373, 1997 WL 587662, at *24 (N.D. Ill. Sept. 18, 1997) ("Outside of voting on an ordinance, the court has difficulty imagining a more legislative function ... Plaintiffs fail to explain how a local legislature's revocation of rights through passage of an ordinance would extend beyond the traditional legislative

role. When an ordinance is introduced that denies a person the specific benefit which was previously bestowed upon him, that person is apt to be in disagreement with the ordinance. He may feel, perhaps rightfully, 'prosecuted.' But that does not transform the legislative act into an executive or judicial one."); Ne. Land Dev., LLC v. City of Scranton, 946 F. Supp. 2d 376, 378 (M.D. Pa. 2013), aff'd, 561 F. App'x 135 (3d Cir. 2014) (deeming legislative and entitled to absolute immunity a decision by the City Council to table a resolution authorizing a land development project after it had been approved by the City Planning Commission and City Engineer.); Woods v. City of Greensboro, No. 14-cv-00767, 2015 WL 8668228, at *3 (M.D.N.C. Dec. 11, 2015) (deeming legislative conduct entitled to absolute immunity when a City Council passed a Resolution authorizing the City to loan money and refused to pass another modifying the terms originally authorized).

This is not a case where Arabbo was denied a vote, like in Norflo Holding Corp. v. City of Chicago, No. 00-cv-06208, 2002 WL 453605, at *11 (N.D. Ill. Mar. 25, 2002). There the court said that preventing a vote on a single business's application was not entitled to absolute immunity. Indeed, in that case the court declared that "without a doubt, any vote by Preckwinkle in opposition to the application once it arrived at the City Council would be within her legislative function." Id. Here, by contrast, the City Council scheduled a special meeting and considered Arabbo's proposal at his request.

Arabbo relies upon cases that reached the opposite conclusion, but they are distinguishable by their very language. For example, in Lacorte v. Hudacs, 884 F. Supp. 64 (N.D.N.Y. 1995), the court found that denial of a contract to a low bidder was administrative, but that was only because a previously adopted policy mandated that if

8

conditions were met the lowest bidder be awarded the contract. Id. at 71. Importantly, however, that court declared that the initial decision to undertake the "project and to adopt certain contract specifications may properly be characterized as flowing from legislative decision-making and actions." Id. Arabbo's case is one where the City of Burton had to make an initial decision, not one where it deviated from pre-established rules that applied to a competitive field of applicants.

## III. CONCLUSION

As shown above, Arabbo's claim against the city council members must fail because they are entitled to absolute legislative immunity. The City of Burton City Attorney Michael Joliat is entitled to qualified immunity. The claim against the City of Burton fails as a matter of law because no individuals whose actions could be attributed to the City remain in suit. Moreover, the factual record could not support a finding that Arabbo's race or ethnicity was the but-for cause of it's decision not to purchase a note for Arabbo's business. Therefore, the Court stands on its prior decision; Arabbo's Motion for reconsideration is **DENIED**.

**IT IS ORDERED**.

                                                S/Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: August 1, 2016

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 1, 2016.
S/Carol A. Pinegar
Deputy Clerk

10